[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
In this criminal prosecution, defendant was transferred to this court from the Superior Court for Juvenile Matters under the mandatory provisions of Public Act 95-225, § 13(a). Defendant has moved to dismiss claiming that the Court lacks subject matter jurisdiction over the defendant.
For reasons hereinafter stated, the motions to dismiss are denied.
Joshua S., age 14, was arrested on a charge of sexual assault in the first degree in violation of General Statutes § 53a-70 (a)(2), a Class B felony. He was also charged with risk of injury to a minor female child in violation of §53-21. His case was transferred to this court under the mandatory provisions of Public Act 95-225, § 13(a) without hearing.
Defendant has filed two separate motions to dismiss.
 I
The first motion is based upon the claim that:
 The "automatic" transfer provision set forth in Public Act 95-225, § 13(a) is unconstitutional on its face and as applied to this case in that it violates the respondent's procedural due process rights as guaranteed by the state and federal constitutions.
 Public Act 95-225 made major changes in the state's juvenile justice system. Section 13(a) of that Act, which repealed § 46b-127, provides, in pertinent part, that:
 "The court shall automatically transfer from the docket for juvenile matters to the CT Page 9325 regular criminal docket of the superior court the case of any child charged with the commission of a capital felony, a Class A or B felony or a violation of § 53a-54d, provided such offense was committed after such child attained the age of fourteen years. The child shall be arraigned in the regular criminal docket of the superior court at the next court date following such transfer. . . ."
It is this automatic provision which defendant claims violates procedural due process rights.
In considering defendant's claims, the Court has reviewed the well-reasoned decision in State v. Jose C.,16 Conn. L. Rptr. No. 13, 419 (May 27, 1996). This decision contains an excellent review of the history of juvenile law under the early Connecticut Common Law and in the State of Connecticut. The Court also examined the constitutional basis for treatment of juveniles accused of crimes.
As pointed out in State v. Jose C., supra, 417-418,State v. Anonymous, 173 Conn. 419 (1977), contains language which indicates that the rights of a juvenile charged with a criminal offense result from statutory authority rather than any inherent or constitutional right. This is in accordance with the well accepted principal that there is no constitutional right to be tried as a juvenile.
Defendant relies to a large extent on Kent v. U.S.,383 U.S. 541 (1966), in his argument that when a juvenile is transferred from a juvenile court to a criminal court, certain fundamental due process rights attach and that the juvenile is entitled to a hearing with proper representation and other safeguards.
The reliance of defendant on Kent in this case is misplaced. The decision in Kent revolves around the Juvenile Court's failure to follow the Juvenile Court Act of the District of Columbia. Under that statute, transfer could only be made after "full investigation." The criteria for "full investigations were promulgated in a Policy Memorandum. In reversing this case, the United States Supreme Court found that the judge made the transfer without following either the statute CT Page 9326 or the policy.
The present case is quite different from Kent in that the statute governing the situation here requires an automatic transfer without hearing or the "full investigations required in the District of Columbia. State v. Jose C. contains an excellent analysis of cases which distinguish Kent from situations where the statutory requirements direct an automatic transfer. UnlikeKent, the Juvenile Court here had no discretion. For example, inState v. Berard, 401 A.2d 448, 451 (R.I. 1979), the Rhode Island Supreme Court upheld the constitutionality of an automatic transfer based upon the charges. See also State v. Perique,439 So.2d 1060, 1064 (La. 1983).
It must also be noted that at the time he was arrested and brought before the Juvenile Court in the District of Columbia, Kent was sixteen years of age. If he had been arrested in this state, under our laws, he would have been treated as an adult ab initio and arraigned in the adult court.
The fact that Kent would be treated as an adult in Connecticut is illustrative of the principal of law that the right to be treated as a juvenile depends on the legislature and does not involve fundamental rights. State v. Anonymous,173 Conn. 414, 417 (1977). Other courts have held that there is no constitutional right to be tried as a juvenile. U.S. v. Quinones,516 F.2d 1309 (1975); see also State v. Jose C., supra, 420, and the cases cited therein.
It cannot then be found that the automatic transfer provision of Public Act 95-225, § 13(a) is unconstitutional as claimed, and the first motion to dismiss must be denied.
 II
Defendant's Motion to Dismiss II raises three separate claims each of which must be considered. The first claim is that:
 Public Act 95-225, § 13(a) violates the respondent's state and federal constitutional rights to equal protection and due process.
Defendant argues that Public Act 95-225, § 13(a) implicates defendant's rights to equal protection and due process CT Page 9327 under Article 1, §§ 1, 8 and 9 of the Connecticut Constitution and the fifth, sixth and fourteenth amendments of the federal constitution. The gravamen of defendant's claim is that the act allows the arbitrary treatment of a fourteen or fifteen-year-old person charged with a Class A or B felony. The Act provides no standards and does not allow the judicial authority to check the prosecution's exercise of discretion. The discretion, defendant claims, allows the prosecutor to arbitrarily create two classes of defendants. One class being persons charged with B felonies who are prosecuted as adults. A second class would be those charged with B felonies who, upon motion of the prosecutor, are transferred and treated as juveniles.
The concept of equal protection under both the state and federal constitutions has been interpreted to require the uniform treatment of persons standing in the same relation to the governmental action questioned. Franklin v. Berger, 211 Conn. 591,594 (1989); Daily v. New Britain Machine Co., 200 Conn. 562,578 (1986).
The equal protection clause does not require absolute equality or precisely equal advantages. Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground. To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. Where the classification impinges upon a fundamental right or impacts upon an inherently suspects group, it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest. On the other hand, where the classification at issue neither impinges upon a fundamental right nor affects a suspect group, it will withstand constitutional attack if the distinction is founded on a rational basis." (Citations omitted.) Franklin v.Berger, supra, 595.
As previously noted, there is no constitutional right to be treated as a juvenile. The statutory classification must then be considered under the rational basis test. Where, as here, the act of the legislature does not contain a suspect classification and does not impinge on a fundamental right, the burden is on the party claiming a violation of equal protection to establish that CT Page 9328 the statutory distinction is without a rational basis. State v.Dupree, 196 Conn. 655, 664 (1985).
The issue presented here is whether the automatic transfer of persons under the age of sixteen, charged with Class A and B felonies furthers a legitimate governmental interest so as to present an equal protection claim. Anyone who keeps informed of the situation must be aware of the proliferation of violent criminal activity among the increasingly younger elements of the population. There is an obvious legitimate governmental interest in curtailing this activity and protecting the public from serious juvenile crime. The legislature's decision to further that interest by the mandatory prosecution of juveniles charged with A and B felonies as adults is reasonably related to the pursuit of that legitimate goal. Since there is a rational basis for the statutory classification, it does not violate the constitutional guarantee required under the constitutional provisions relied upon by defendant. As long as the classification is not based upon prohibited or arbitrary factors, there is no violation of constitutional rights. State v.Delossantos, 211 Conn. 258, 287-288 (1989); State v. Jose C., supra, 424.
 III
Defendant also claims that the motion to dismiss should be granted because:
 Public Act 95-225, § 13(a) violates the separation of powers doctrine.
Here, defendant claims that Public Act 95-225, § 13 (a) prohibits judicial intervention concerning the transfer of fourteen and fifteen-year-old persons charged with A and B felonies from the adult docket to the juvenile docket. It is claimed that the language of Public Act 95-225, § 13(a) allows the prosecutors to control the docket by withholding transfer from the judiciary in violation of the separation of powers doctrine.
Defendant cites State v. Campbell, 224 Conn. 168, 177
(1992), where the court stated that "(a) statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts. . . ." The CT Page 9329 court then went on to set forth a two prong test to determine if an impermissible infringement of the judicial authority existed. The statute would be held unconstitutional if: "(1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; and (2) it significantly interferes with the orderly functioning of the Superior Court's judicial rule." State v. Campbell, supra, 178.
It cannot be found, however, that the classification and treatment of persons as juveniles is a matter within the exclusive control of the judicial branch since, as previously noted, the classification and treatment of juveniles is a legislative function.
Defendant argues that the statute vests control of the docket in the state's attorney rather than the Court. As an example, he argues that by charging fourteen and fifteen-year-olds with A and B felonies and declining to return them to the juvenile court, the state's attorney could impact the crowded adult court docket
The same situation exists at present outside ofPublic Act 95-225, § 13(a). Although the control of the docket is in the hands of the judiciary, the control of the charges is in the hands of the prosecution. It has been recognized that the basis for charging decisions is an area not well suited for broad judicial oversight. Massameno v. Statewide Grievance Committee,234 Conn. 539, 575 (1995). The charges, however, determine which court an accused person will come before, Geographical Area or Judicial District, thereby impacting the dockets of the courts.
The charging situation is little different from the situation under Public Act 95-225, § 13(a) with respect to influencing court dockets. This situation has never been considered a violation of the separation of powers under the state or federal constitution.
 IV
The next issue raised by defendant in support of the motions is stated as follows:
 The Court should interpret Public Act 95-225, § 13(a) to allow judicial control over the criminal docket and thereby save CT Page 9330 the statute from unconstitutionality.
Defendant argues that the Court should interpretPublic Act 95-225, § 13(a) in direct controversion of its explicit language so as to save its constitutionality. State v. Indrisano,228 Conn. 795, 801 n. 5 (1994). This argument presupposes a conclusion that the statute is unconstitutional. Since it cannot be found that the statute is unconstitutional, the argument fails.
 V
For all of the reasons above stated, both of defendant's motions to dismiss, must be denied.
PURTILL, J.